# Dickey *v.* The State.

## Assault with Intent to Murder.

(Decided June 30, 1916. Rehearing denied August 1, 1916.
72 South. 608.)

1. **Appeal and Error; Review; Presumption.**—Where the bill of exceptions sets out only some of the evidence and its tendencies, and does not purport to set it all out, evidence objected to not inherently incompetent but such as may be competent and relevant in connection with other evidence, it will be presumed to support the ruling of the trial court thereon that the other evidence rendered it admissible.

2. **Evidence; Res Gestae.**—If evidence is offered tending to show that the particulars of a difficulty between the officer and the father of the defendant were of the res gestae of the major fact in the case against defendant, who shot the officer, all that was said and done at the time of the difficulty was competent.

3. **Assault and Battery; Motive; Evidence.**—The fact that the prosecuting officer seized liquors belonging to defendant or his father the morning previous to the assault by defendant on such officer, in connection with threats made by defendant, is admissible as tending to show motive.

4. **Same.**—Where the theory of the prosecution was that defendant entered into a conspiracy to assault the prosecuting officer, and was deputized and given a warrant to arrest him in carrying out such conspiracy, it was competent for the prosecution to show what was said at the time of the issuance of the warrant.

5. **Witnesses; Examination.**—Where defendant testified that he was so under the influence of intoxicants that he could not form the intent to commit murder, it was competent on cross examinaion to inquire as to the quantity of liquor consumed, anad when, and from whom he had obtained it.

6. **Evidence; Best and Secondary.**—Where the inquiry was collateral, the effort being to show bias by proof of contributions made to assist to convict defendant and authorized by the town council, the best evidence was not

[Dickey v. The State.]

required, and the record of the resolution so passed by the council was not essential.

7. **Appeal and Error; Review; Scope.**—The court will not review the oral charge of the court where no exceptions were reserved thereto before the jury retired.

8. **Charge of Court; Reasonable Doubt.**—Charges that if the jury believe from all the evidence beyond a reasonable doubt that defendant is guilty, although the jury might believe it possible that he is not guilty, they should convict, are proper.

9. **Assault with Intent to Murder; Instruction.**—A charge that the marshal had no lawful authority to seize the liquors without a warrant, was properly refused in a prosecution for assault with intent to murder alleged to have been committed upon a town marshal by defendant after the marshal had killed defendant's father while seizing liquors found in his possession; such issues not being pertinent to the case against defendant.

10. **Same.**—A charge that to reduce the offense to an assault and battery, it was not necessary that defendant should have been unconscious of what he was doing when he struck, but if there was sufficient provocation to excite sudden passion under which defendant acted, the presumption is that that passion disturbed the sway of reason, was properly refused as invasive of the province of the jury.

11. **Same.**—A charge that if defendant saw his father dead or dying so as to cause in an ordinary man, a reasonable man, a feeling of overpowering resentment, rendering him incapable of cool reflection, upon which defendant acted, he would not be guilty of assault with intent to murder, was properly refused as invasive of the province of the jury.

12. **Same.**—A charge that if the jury believed the evidence, there was not the lapse of sufficient time after defendant saw his father dead or dying until the shooting of the officer by defendant, for what the law terms cooling time, was properly refused.

13. **Same.**—A charge that if defendant's father was authorized by warrant to arrest the person assaulted by defendant, and if his father undertook to arrest such person, but he resisted and killed the father, such resistance was unlawful and unjustifiable, was properly refused.

14. **Witnesses; Examination; Bias.**—Where a witness for the prosecution testified that he contributed funds to prosecute defendant, and that the corporate authorities of which he was one, had also contributed, the refusal to allow the witness to testify as to the amount contributed by the authorities was within the sound discretion of the trial court.

(Brown, J., dissents in part.)

APPEAL from Madison Law and Equity Court.

Heard before Hon. J. H. BALLENTINE.

(This cause was reviewed by the Supreme Court, and the writ denied. See *Dickey v. State,* 197 Ala. 610, 73 South. 72.)

Cecil Dickey was convicted of an assault with intent to murder one Stokely Milner, and he appeals. Affirmed.

[Dickey v. The State.]

The exceptions to evidence sufficiently appear from the opinion, as do the tendencies of the evidence. The following is the charge given for the state:

If you believe from all the evidence in this case beyond a reasonable doubt that the defendant is guilty, although you may believe it is possible that he is not guilty, you must convict him.

The following are the charges referred to as refused to the defendant:

(1) The court charges the jury that under the evidence in this case Milner did not have any lawful authority to seize liquors without a warrant, simply because it was in or at the mill, whether he was marshal or not.

(2) The court charges the jury that the town marshal of New Hope had no authority to search and enter the mill and seize liquor at the mill without a warrant.

(5) To reduce the offense to an assault and battery it is not necessary that the defendant, at the time he struck the blow, should have been unconscious of what he was doing, but if there was sufficient provocation to excite sudden passion, and defendant acted under such passion, then the presumption is that passion disturbed the sway of reason, and made him regardless of his act, and if the jury believe this from the evidence, then they may find him guilty of an assault and battery merely.

(6) The court charges the jury that if the defendant, on seeing his father dead or dying, bleeding and gasping for breath, under such circumstances as would cause an ordinary man and reasonable man to act upon them through an overpowering feeling of resentment, rendering his mind incapable of cool reflection, and that the defendant was acting under such impulse of resentment and without reflection and not from malice, his act was not in law a malicious act, and he would not be guilty of an assault with intent to murder, and you should not convict him of more than an assault and battery.

(11) If the jury believe the evidence in this case, there was not the lapse of sufficient time after defendant saw his father dead or dying until the shooting by the defendant in this case for what the law terms "cooling time."

(14) If the father of defendant was authorized by Owens, the justice of the peace, in writing to arrest Milner under a

warrant for him, and he undertook to arrest him, and Milner resisted and killed him, this was unlawful and unjustifiable.

TAYLOR & WATTS, and JOHN A. LUSK & SON, for appellant. W. L. MARTIN, Attorney General, and HARWELL G. DAVIS, Assistant Attorney General, for the State.

BROWN, J.—The questions presented for review arise from the admission of certain evidence offered by the state, the giving of a special charge requested by the solicitor, and the refusal of several charges requested by the defendant.

(1) The bill of exceptions only sets out some of the evidence and some of the tendencies of the evidence, but does not purport to set out all the evidence, or even all the tendencies of the evidence. With the record in this condition, if the evidence objected to is not inherently incompetent, but such as may be competent and relevant in connection with other evidence, the presumption will be indulged in favor of the ruling of the trial court that other evidence was offered rendering the testimony admissible.—*Harper v. State*, 109 Aa. 28, 19 South. 857; *Davis v. State*, 168 Ala. 53, 52 South. 939; *Ventress v. Town of Clayton*, 165 Ala. 349, 51 South. 763; *Pope v. State*, 183 Ala. 61, 63 South. 71; *Harwell v. State*, 12 Ala. App. 269, 68 South. 500; *Whatley v. State*, 144 Ala. 75, 39 South. 1014. Otherwise stated, the burden is on the appellant to affirmatively show error.— *Sanders v. Steen*, 128 Ala. 633, 29 South. 586; *Clardy v. Walker*, 132 Ala. 264, 31 South. 78; *Sanders v. Edmonds*, 98 Ala. 157, 13 South. 505; *Webb v. Ballard*, 97 Ala. 584, 12 South. 106; *Donaldson v. Wilkerson*, 170 Ala. 507, 54 South. 234; *Smith v. State*, 183 Ala. 10, 62 South. 864. If, however the evidence objected to is inherently incompetent—not capable of being rendered competent and admissible in connection with other evidence—no such presumption prevails.—*Dugger v. Pitts*, 145 Ala. 358, 39 South. 905, 8 Ann. Cas. 146.

(2) The testimony as to particulars of the difficulty between the father of the defendant and Milner were of the former class. If evidence was offered showing that the particulars of the difficulty between Milner and W. R. Dickey were of the res gestæ of the major fact in this case—the shooting of Milner by defendant—or that it was a part of one continuous transaction in which W. R. Dickey was also shot and killed, or if the shoot-

ing of Milner by defendant was the result of a conspiracy between the defendant and W. R. Dickey, evidence as to the particulars leading up to and embraced in the shooting of W. R. Dickey by Milner and all that was said and done at that time was competent.—*Wood v. State,* 128 Ala. 27, 29 South. 557, 86 Am. St. Rep. 71; *Dixon v. State,* 128 Ala. 54, 29 South. 623; *McAnally v. State,* 74 Ala. 9; *Wilson v. State,* 12 Ala. App. 97, 68 South. 543; *Thomas v. State,* 133 Ala. 139, 32 South. 250; *West v. State,* 168 Ala. 1, 53 South. 277. Therefore it does not affirmatively appear that the testimony as to the particulars attending the killing of defendant's father by the state's witness, Milner, was irrelevant, and that its admission was error.

(3) The fact that the prosecuting witness, Milner, as marshal of New Hope, seized liquors belonging to the defendant or his father on the morning previous to the assault and delivered the liquors seized to the municipal authorities, in connection with the threats made by the defendant and his conduct toward Milner previous to the assault, tended to show motive for the assault.— *Jones v. State,* 13 Ala. App. 10, 68 South. 690; *Brunson v. State,* 124 Ala. 40, 27 South. 410; *Marler v. State,* 68 Ala. 580.

(4) One theory of the prosecution was that a conspiracy existed between the witness Owens, who was jointly indicted with the defendant, the defendant, and W. R. Dickey to assault the witness Milner, and that a warrant for the arrest of Milner was issued by the witness Owens on an affidavit of W. R. Dickey, charging Milner with the larceny of the whisky seized at the mill on the morning before the killing, to be used as a cloak to cover the real motives of the conspirators; that W. R. Dickey was deputized to execute this warrant as a means of giving color of authority to his conduct, and to afford him an opportunity to approach and assault Milner. The fact of the issuance of the warrant and Dickey's deputation was brought out by the defendant, and it was permissible for the state to show what was said at the time the warrant was procured as a circumstance tending to sustain this theory of the prosecution.—*Way v. State,* 155 Ala. 52, 46 South. 273; *Morris v. State,* 146 Ala. 66, 41 South. 274; *Brindley v. State,* 193 Ala. 43, 69 South. 536; Underhill, Cr. Evidence, 492-494.

(5) The defendant, as a witness in his own behalf, testified to facts tending to show that shortly before the assault on Milner he had been drinking to such extent that at the time of the

[Dickey v. The State.]

assault he was so under the influence of intoxicating liquors that he could not form the intent to murder (*Whitten v. State*, 115 Ala. 72, 22 South. 483), and it was permissible on cross-examination for the purpose of testing the credibility of his testimony to inquire as to the quantity of liquor consumed and when and from whom he obtained it.

For the purpose of showing interest or bias on the part of witnesses in the case, the court allowed the defendant to show that some of the witnesses had contributed to a fund for the prosecution of the defendant, but limited the scope of the inquiry to the witnesses in the case. This limitation was proper. The fact that others who were not witnesses in the case contributed was wholly immaterial. It was not only the right of the defendant to show that such contributions were made by the witness, but the amount contributed as well (*Harwell v. State*, 11 Ala. App. 188, 65 South. 702; and if, as an official of the town of New Hope, the witness participated in making a contribution for the special purpose of prosecuting this defendant, it was proper to show this, and the amount of such appropriation; and especially is this true in view of the fact that witness had agreed to pay his "part" of such contribution. The witness Butler testified that he agreed to contribute $25 of his own to the fund, and that he "partly voted the corporation money," and that he agreed to contribute his own money through the corporation, but the court refused to allow the defendant to show the amount of such contribution by the corporate authorities.

"Much latitude is allowed in the cross-examination of witnesses, and much must be left to the enlightened discretion of the court. No uniform, universal rule can be laid down. Much wider liberality of cross-examination is permissible when the witness betrays partisanship or partiality than when he narrates the facts with prompt indifference, whether they favor the one side or the other."—*Ingram v. State*, 67 Ala. 67; *Burger v. State*, 83 Ala. 36, 3 South. 319.

"The tendency of modern practice seems favorable to great latitude, however, in this regard."—*Marler v. State*, 68 Ala. 580; 1 Greenleaf, Evidence, §§ 454-455.

And in the cases above cited the Supreme Court lays down the rule that to justify a reversal for extending the latitude and scope of cross-examination, a strong case of abuse must be shown.—*Ingram v. State, supra.* But a different question is

presented where, by curtailing the cross-examination of a hostile, partisan witness, a party is denied the right to bring out facts clearly showing bias toward the party calling for the testimony. The feelings and relationship of a witness toward the parties are never collateral, and testimony bearing thereon is always relevant.—*Cook v. State,* 152 Ala. 66, 44 South. 549; Underhill, Criminal Evidence, § 222. So the question is not one where testimony as to a collateral fact is excluded, but where a party has been denied the right to offer evidence of a fact relevant to the issues in the case.

"Although the extent to which the cross-examination may extend depends very much upon the discretion of the trial judge, yet, if testimony is rejected which would clearly show the bias of the witness, it is error and grounds for a new trial."—Jones on Evidence, § 829; *Harwell v. State, supra; Schultz v. Railway Co.,* 89 N. Y. 242; *Garnsey v. Rhodes,* 138 N. Y. 461, 34 N. E. 199; *People v. Lee,* 66 Cal. 662, 6 Pac. 859; *State v. McFarlain,* 41 La. Ann. 686, 6 South. 728.

The defendant testified as a witness in his own behalf, and his testimony tended to show that the assault was justifiable. The state, for the purpose of breaking down his testimony, offered several witnesses in rebuttal, including the witness Butler, who testified as to the defendant's general bad character and his unworthiness of belief. Under these circumstances, we are not able to say that the action of the court in curtailing the cross-examination of the witness Butler was without injury to the defendant. Where relevant evidence affirmatively appears to have been rejected, it is no answer that the bill of exceptions does not purport to set out all the evidence. The burden is on the appellant to show error; error shown, it is on the state to show that it was without injury.—*Smith v. State,* 183 Ala. 10, 62 South. 864; *McDonald v. Wood,* 118 Ala. 589, 24 South. 86. In other words, if this fact was brought out by subsequent examination or was shown by other evidence, it was the duty of the state to see to it that the record shows these facts.

(6) Nor is the objection that the record of the resolution of the town council is the best evidence of this fact tenable. This was a collateral inquiry merely to show bias, and the best evidence was not requisite.—*Griffin v. State,* 129 Ala. 93, 29 South. 783; *Allen v. State,* 79 Ala. 34.

[Noah v. The State.]

{7) The correctness of the oral charge of the court was not questioned by appropriate exception taken thereto before the jury retired, and its correctness will not be reviewed.—*Tice v. State,* 3 Ala. App. 164, 57 South. 506; *Moore v. State,* 146 Ala. 687; *Barlew v. State,* 5 Ala. App. 290, 57 South. 601.

(8) The special charge, given at the instance of the state, has been approved as correct by the Supreme Court.—*Prater v. State,* 107 Ala. 26, 18 South. 238; *Jackson v. State,* 136 Ala. 22, 34 South. 188.

(9-13) No error is shown in refusing charges to the defendant. Charges 1 and 2 were not pertinent to any issues in the case, and, whether correct or not, were properly refused. Charges 5, 6, 11, and 14 were invasive of the province of the jury.

(14) The views above expressed as to the record showing reversible error in respect to the ruling of the court curtailing the cross-examination of the witness Butler are the views of the writer only. The other members of the court hold that the matter was one within the enlightened discretion of the trial court; that no abuse of discretion is shown, and, if error, was without injury.

The result is that the judgment of the trial court must be affirmed.

Affirmed.

BROWN, J., dissenting.