(81 South. 848)

PAGE v. STATE.   (6 Div. 498.)

(Court of Appeals of Alabama.   April 8, 1919.)

1. CRIMINAL LAW ⬤➡363 — EVIDENCE — RES GESTÆ.

Where altercation began in barber shop and defendant was put out, and he said he would be back, and 10 or 20 minutes later did come back with a pistol, looking for deceased, and, not finding him in barber shop, went next door into restaurant, and there killed deceased, the whole transaction was admissible as part of res gestæ.

2. CRIMINAL LAW ⬤➡561(3)—INSTRUCTIONS— GOOD CHARACTER.

An instruction that good character of defendant may in light of "other evidence" generate a reasonable doubt is properly refused, as good character must be considered in light of all the evidence.

3. CRIMINAL LAW ⬤➡800(5)—INSTRUCTION— "PROBABILITY OF INNOCENCE"—DEFINITION.

An instruction that probability of innocence is a just foundation for a reasonable doubt of guilt is properly explained by defining probability as having more evidence for than against, and supporting or giving ground for a belief, but not to an absolute demonstration.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Probability.]

Appeal from Circuit Court, Jefferson County; C. W. Ferguson, Judge.

Zeb Page was indicted on a charge of murder in the first degree, convicted of manslaughter in the first degree, and from the judgment he appeals. Affirmed.

John W. Altman, of Birmingham, for appellant.

J. Q. Smith, Atty. Gen., and Horace Wilkinson, Asst. Atty. Gen., for the State.

SAMFORD, J.   [1] The evidence for the state tended to show that the defendant and deceased had a difficulty in a barber shop in Birmingham; that when the difficulty first began defendant had a pistol; that there was quite a fight, during which defendant was disarmed, and that several bystanders aided in putting defendant out of the barber shop and on the sidewalk; that the defendant left with the remark that he would come back; that he did go, and returned in a short time, variously estimated by the witnesses at from 10 to 20 minutes, with a pistol in his hand; that he immediately entered the barber shop, where he had left deceased, and, not finding him there, went through the barber shop into a restaurant adjoining the rear, where he found deceased, and said, "You, ——, I'll get you now," and immediately attacked deceased and killed him. The state, over the objection of the defendant, was permitted to prove all the details of the difficulty from the time the defendant and deceased first began the altercation. All the evidence for the state tends to show that there was no abandonment of the difficulty by the defendant, but that from the beginning to the end the difficulty was pursued by the defendant. It was therefore one continuous transaction, and all of the details and conversations incident thereto, occurring at the place and during the time, were a part of the res gestæ. Dickey v. State, 15 Ala. App. 135, 72 South. 808; Wilson v. State, 12 Ala. App. 97, 68 South. 543; Ross v. State, 62 Ala. 224; Armor v. State, 63 Ala. 173; Jordan v. State, 81 Ala. 20, 1 South. 577; Crawford v. State, 86 Ala. 16, 5 South. 651; Morris v. State, 146 Ala. 66, 41 South. 274.

[2] The defendant requested in writing the following charge:

"The court charges the jury that good character of a defendant in a criminal case, if established to the satisfaction of the jury, may in itself, in the light of other evidence in the case, generate a reasonable doubt of the defendant's guilt, and thereby authorize his acquittal."

Good character is an evidentiary fact, which must be considered in the light of all the evidence in the case; and, when a charge is so worded as not to require that, it is properly refused.

In view of what has been said, it follows that the charges as requested by the defendant, based upon the assumption that there were two difficulties, were properly refused.

[3] At the request of the defendant, the court gave to the jury the following charge, in writing:

"I charge you, gentlemen of the jury, that if from all the evidence in this case there is a probability of defendant's innocence, that then this probability of innocence is a just foundation for a reasonable doubt of his guilt, and you should acquit the defendant."

After reading this charge, the court ex mero motu gave this explanatory charge:

"Well, I define probability to you as having more evidence for than against, and supporting or giving ground for a belief, but not to an absolute demonstration."

To our mind, this is a correct definition, and was properly given.

If there was error in what the court said to the jury, it was corrected, so as not to render it reversible error.

There is no error in the record, and the judgment is affirmed.

Affirmed.